IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | NO. 3:18-cr-00202 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| ) | |
| ANTHONY MCGLOTHER ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 58, "Motion"). Via the Motion, Defendant seeks a reduction of his 62-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant asks for compassionate release based on the ongoing COVID-19 pandemic, as applied to his specific health profile, and because he has served fifty percent of his sentence without any disciplinary infractions. The Government has filed a response in opposition (Doc. No. 60, "Response"), arguing that the Motion should be denied because Defendant has not established extraordinary and compelling reasons for his release.

BACKGROUND

On August 8, 2018, Defendant was charged in an indictment with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. (Doc. No. 1). On July 12, 2019, Defendant pled guilty to the sole count of the indictment. (Doc. No. 42). On November 4, 2019, this Court sentenced Defendant to serve 62 months of imprisonment followed by three years of supervised release. (Doc. No. 51). Defendant has been serving his sentence at Marion USP. According to BOP, Defendant's release date is January 9, 2023. *See Federal Inmate*

*Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Aug. 6, 2021).

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[1] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. §

---

[1] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
  (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[2] Therefore, "[u]ntil the Sentencing

---

[2] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution

Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[3] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

[3] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
        i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
        ii) [in effect at the time of sentencing]

(5) any pertinent policy statement—
    A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
    B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## ANALYSIS

### A. Extraordinary and Compelling Reasons

Defendant bases his request for compassionate release on the fact that he "already caught COVID-19 back in October of 2020 and [he] still has symptoms" and his "underlying medical issue" of hypertension. (Doc. No. 58 at 1-2).

In its Response, the Government argues that Defendant has not proffered any extraordinary and compelling reasons to grant release pursuant to 18 U.S.C. § 3582(c)(1)(A), because "the fact that [Defendant] had COVID-19 does not qualify as such [an extraordinary and compelling] reason, nor does the fact that he has underlying conditions which could make him more susceptible to a serious outcome from COVID-19 should he contract it again [because] Defendant has been fully vaccinated against COVID-19[.]" (Doc. No. 60 at 1).

To grant the Motion, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to show that

extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling."). As noted above, the Court has "*full discretion* to define 'extraordinary and compelling'" and is not bound by the reasons listed in policy statement § 1B1.13. *Jones*, 980 F.3d at 1111 (emphasis added)

As noted above, Defendant bases his request for compassionate release in part on his general fear that he will be reinfected with COVID-19. However, in defining "extraordinary and compelling," virtually all district courts that have visited the issue have held that a generalized fear of contracting COVID-19 while incarcerated is not an "extraordinary and compelling" reason to grant compassionate release. *See United States v. Wood*, No. 2:12-cr-00027-1, 2021 WL 1134772, at *5 (E.D. Tenn. Mar. 24, 2021); *United States v. Jent*, No. CR 6:13-026-DCR, 2020 WL 6829760, at *1 (E.D. Ky. Nov. 20, 2020); *United States v. Afari*, No. 3:18-CR-00135-2, 2020 WL 5816249, at *5 (M.D. Tenn. Sept. 30, 2020); *see also United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) ("Courts have been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason." (citation omitted)). Thus, Defendant's general fear of a COVID-19 re-infection, even if Defendant is still experiencing symptoms of his first infection as he claims,[4] is not an extraordinary and compelling reason for compassionate release. Additionally, with regard to Defendant's concern that he faces the potential for reinfection with the COVID-19 virus at USP Marion, the Bureau of Prisons reports only 8 case of COVID-19 among the 1,326 inmates at USP Marion. *See COVID-19 Cases*, Bureau of Prisons,

---

[4] Defendant has not provided proof (via medical records, for example) that he is still experiencing such symptoms, and as far as the Court can tell from Defendant's Motion, his conclusions that (1) he currently has symptoms of some malady (2) that that symptoms are in fact enduring symptoms from his COVID-19 infection, is the result of self-diagnosis. And a layperson's self-diagnosis, no matter how sincere, tends to be unreliable.

https://www.bop.gov/coronavirus/ (last accessed Aug. 8, 2021). Further, 844 inmates and 142 staff have been fully vaccinated with the COVID-19 vaccine. *See COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Aug. 8, 2021). Thus, the Bureau of Prisons taking steps to prevent any further occurrence of the coronavirus in the prison. That is not to say that he could not possibly become infected again by COVID-19 (most likely, the Delta variant) despite being previously infected and vaccinated, but the possibility of another infection exists whether or not he remains in BOP custody.

Additionally, the Court finds that Defendant has not demonstrated that he has a medical condition that the CDC indicates would place him at a higher risk from severe complications from COVID-19. *See United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (upholding district court's evaluation of movant's medical conditions when considering whether defendant demonstrated extraordinary and compelling reasons and noting that the district court "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions."). Although he asserts in the Motion that he has hypertension, the CDC states that "[h]aving heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and *possibly* high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." People with Certain Medical Conditions, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Aug. 8, 2021) (emphasis added). Thus, the CDC indicates that this diagnosis would only possibly make Defendant more likely to get severely ill from COVID-19. This Court previously has held that a diagnosis of hypertension (with no other underlying medical conditions) does not constitute extraordinary and compelling reasons for a defendant's early

release. *See United States v. Johnson*, No. 3:16-CR-00242, 2020 WL 4753846, at *5 (M.D. Tenn. Aug. 17, 2020), appeal dismissed, No. 20-6026, 2020 WL 7213445 (6th Cir. Nov. 12, 2020).

Additionally, numerous other courts have denied a defendant's motion for compassionate release that was based on the medical condition of hypertension combined with (*i.e.*, in the particular context of) the COVID-19 pandemic. *See United States v. Cox*, No. 13-CR-20779-02, 2020 WL 4581692, at *1 (E.D. Mich. Aug. 10, 2020) (explaining that a diagnosis of hypertension does not constitute extraordinary and compelling reasons and noting that "hypertension is a common medical condition shared by over 100 million Americans."); *United States v. Hall*, No. CR JKB-04-323, 2020 WL 4582712, at *2 (D. Md. Aug. 10, 2020) (explaining that the defendant's hypertension diagnosis does "not sufficiently differentiate him form the thousands of similarly situated incarcerated individuals to constitute extraordinary and compelling reasons."); *United States v. Chambers*, No. 18-47 2020 WL 4260445, at *4 (E.D. La. July 24, 2020) (denying motion for compassionate release for 51-year-old male defendant with hypertension and other alleged medical conditions, explaining that "courts have found that hypertension does not amount to an extraordinary or compelling reason for release" during the COVID-19 pandemic) (collecting cases); *United States v. Jordan*, No. 09-CR-20490, 2020 WL 4016087, at *2 (E.D. Mich. July 16, 2020) (noting that "the CDC believes that hypertension 'might be' a COVID-19 risk factor, but this determination is still uncertain").

And even if hypertension were a condition that would certainly (rather than possibly) place one at a higher risk from severe complications from COVID-19, it would not be so in Defendant's case because he has been vaccinated. *See United States v. Catchings*, No. 12-20372, 2021 WL 3417912, at *2 (E.D. Mich. Aug. 5, 2021) ("Catchings argues that he fears that his hypertension and obesity render him vulnerable to COVID-19. While these conditions may increase

unvaccinated individuals' risks of severe illness from COVID-19, the same is not true for vaccinated individuals."). According to current reporting from the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more." See COVID-19 Vaccines Work, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last accessed Aug. 8, 2021).[5] Further, regarding people who are vaccinated but still get COVID-19, the vaccine has been shown to "provide protection against severe illness and hospitalization among people of all ages eligible to receive [it]." *Id*. Significantly, "[t]his includes people . . . who are at higher risk of severe outcomes from COVID-19." *Id*.

Defendant received the first dose of the Pfizer vaccine on December 31, 2020, and the second dose of the Pfizer vaccine on January 22, 2021. (Doc. No. 60-1). Therefore, he is fully vaccinated, meaning that he is protected to the fullest extent by the vaccine. As a result, Defendant's fear of contracting the virus or suffering severe illness is not a compelling reason to release him and the Court, in its discretion, finds that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release. Thus, his Motion is denied on this basis, and the Court need not proceed to the remaining steps of the compassionate release analysis (*i.e.*, an analysis of the Section 3553(a) factors).

---

[5] The Court would not begrudge either party disagreeing with a statistical representation or opinion from any particular source, including the CDC. This is true for various reasons, including the fact that various public health authorities, including the CDC, have changed their views over time on various COVID-related topics as COVID-related events, circumstances and experiences have unfolded. But of course such a disagreement tends to be weighty only to the extent that the grounds for disagreement are identified—especially with respect to a source like the CDC, with its unique status in this country with respect to matters relating to COVID-19. The Court is unaware of any particular basis for disagreeing with the CDC's relevant views cited herein, and neither party has asserted any disagreement, let alone shown any basis for such disagreement. And in the Court's experience, on compassionate release motions based on the prevalence of COVID-19, both the Government and the defendant typically cite and rely on the CDC's views, and the Court will do so here, as seems well within the Court's discretion.

B. Section 3553(a) Factors

As just suggested, because Defendant fails to qualify for compassionate release, irrespective of how the Section 3553(a) factors apply to him, the Court will not address the Government's (certainly colorable) suggestion that they militate against compassionate release for Defendant.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release.

For these reasons, the Motion (Doc. No. 58) will be **DENIED**.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE